WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DEIDRE LEANORA DURON,            )
                                 )
                       Plaintiff,    )
                                 )
  vs.                            )
                                 )
NANCY A. BERRYHILL, acting       )
Commissioner of Social Security, )
                                 )     No. 3:17-cv-0147-HRH
                      Defendant.    )
_____)

## O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff Deidre Leanora Duron has timely filed her opening brief,[1] to which defendant, Nancy A. Berryhill, the acting Commissioner of the Social Security Administration, has responded.[2] Oral argument was not requested and is not deemed necessary.

### Procedural Background

On December 1, 2011, plaintiff filed an application for disability benefits under Title II of the Social Security Act. Plaintiff alleges that she became disabled on April 1, 2010.

---

[1] Docket No. 12.

[2] Docket No. 14.

Plaintiff alleges that she is disabled due to thoracic spine issues, autonomic dysreflexia, and depression. Plaintiff's application was denied initially on August 7, 2012. Plaintiff requested an administrative hearing, which was held on February 11, 2013. On June 4, 2013, an administrative law judge (ALJ) denied plaintiff's claim. On December 2, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's June 4, 2013 decision. Plaintiff sought judicial review. On January 4, 2016, the court reversed the decision of the Commissioner and remanded the matter for further hearings. On remand, an administrative hearing was held on December 6, 2016. A supplemental hearing was held on March 31, 2017. On May 3, 2017, the ALJ again denied plaintiff's claim. The Appeals Council did not assume jurisdiction within thirty days of the ALJ's May 3, 2017 decision, thereby making this the final decision of defendant.

On July 5, 2017, plaintiff commenced this action for judicial review of defendant's final decision.

## General Background

Plaintiff was born on January 30, 1978. She was 35 years old at the time of the February 11, 2013 hearing. Plaintiff is married and has two teen-age boys. Plaintiff has a GED and a paralegal certificate. Plaintiff's past relevant work includes work as an administrative assistant at a law firm.

## The ALJ's Decision

The ALJ first determined that plaintiff "last met the insured status requirements of the

Social Security Act on December 31, 2015."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 2010 through her date last insured of December 31, 2015...."[5]

At step two, the ALJ found that "[t]hrough the date last insured, the claimant had the

---

[3]Admin. Rec. at 469.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 470.

-3-

following severe impairments: chronic pain syndrome with degenerative disc disease and mild autonomic dysfunction; obesity; depressive disorder secondary to chronic pain issues; and somatoform disorder."[6]

At step three, the ALJ found "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found

> that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). In addition, the claimant was able to frequently push/pull and she was able to frequently reach and frequently overhead reach with the bilateral upper extremities. The claimant could have frequent foot control operation with the bilateral lower extremities. She could do no climbing of ladders, ropes, or scaffolds and she had to avoid exposure to unprotected heights. She could have frequent contact with moving machinery. She was limited to work which would not require expectations of performance regarding filling quotas. Finally, the claimant needed a sit/stand option that allowed her to alternate between a sitting or standing position throughout the day.[8]

The ALJ considered plaintiff's pain and symptom statements and found that her

---

[6]Admin. Rec. at 470.

[7]Admin. Rec. at 470.

[8]Admin. Rec. at 471.

statements were "not entirely consistent with the medical evidence and other evidence in the record...."[9]

The ALJ gave significant weight to Dr. Lace's opinion.[10] The ALJ gave partial weight to Dr. Lebeau's opinion.[11] The ALJ gave some weight to Dr. Harder's opinion.[12] The ALJ gave ANP Thompson's opinions little weight.[13] The ALJ gave little weight to Dr. Kropp's opinion.[14] The ALJ gave little weight to Dr. Vestal's opinion.[15] The ALJ gave little weight to the opinion of Dr. Sanford.[16]

---

[9]Admin. Rec. at 472.

[10]Admin. Rec. at 475. Dr. Michael Lace, a licensed psychologist, testified as a medical expert at the March 31, 2017 administrative hearing. Admin. Rec. at 493. Dr. Lace testified that plaintiff had moderate difficulties with concentration, persistence, or pace; and moderate difficulties with adaptation. Admin. Rec. at 496. Dr. Lace testified that based on these moderate difficulties, plaintiff would be limited to "a slow pace setting in terms of tasks. By way of example, a high-speed production line setting with high quotas, frequent requirements for quotas would be precluded." Admin. Rec. at 496. Dr. Lace testified that plaintiff would be limited to "fairly routine and repetitive type of tasks." Admin. Rec. at 497.

[11]Admin. Rec. at 476. Dr. Lebeau's opinion is discussed in detail below.

[12]Admin. Rec. at 476. Dr. Harder's testimony is discussed in detail below.

[13]Admin. Rec. at 477. Thompson's opinions are discussed in detail below.

[14]Admin. Rec. at 477-78. Dr. Kropp's opinion is discussed in detail below.

[15]Admin. Rec. at 478. On June 29, 2012, Dr. Robert Vestal opined that plaintiff could frequently lift/carry 10 pounds; stand/walk for 2 hours; sit for 6 hours; was unlimited as to pushing/pulling; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; and should avoid concentrated exposure to extreme cold, vibration, and hazards. Admin. Rec. at 66-68.

[16]Admin. Rec. at 478. On June 29, 2012, Dave Sanford, Ph.D., opined that plaintiff's mental impairments were non-severe because she had no restrictions of activities of daily
(continued...)

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a general clerk."[17]

Thus, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 1, 2010, the alleged onset date, through December 31, 2015, the date last insured...."[18]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible

---

[16](...continued)
living, no difficulties maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Admin. Rec. at 64-65.

[17]Admin. Rec. at 479.

[18]Admin. Rec. at 479.

to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in giving little weight to ANP Thompson's opinion as to plaintiff's mental capacity.[19] Plaintiff saw Catherine Thompson, ANP, for management of her chronic pain. Thompson began treating plaintiff in 2008.[20]

On December 1, 2016, Thompson opined that plaintiff would have moderate limitations in her ability to carry out short instructions, marked limitations in her ability to remember and carry out work-like procedures, and extreme limitations in her ability to understand/remember short instructions, understand/remember/carry out detailed instructions, maintain concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workweek without interruptions from psychologically based symptoms, and perform at a consistent pace with a standard number and lengths of rest periods.[21]

---

[19]Thompson also offered an opinion as to plaintiff's physical impairments, which the ALJ rejected, but plaintiff does not argue that this was error.

[20]Admin. Rec. at 1329.

[21]Admin. Rec. at 1321-1322.

Thompson was a treating source. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Thompson's opinion was contradicted by the opinions of Dr. Lace and Dr. Sanford. Thus, the ALJ was required to give specific and legitimate reasons for rejecting Thompson's opinion.

The only reason the ALJ gave for rejecting Thompson's opinion was that it was not support by the medical evidence. The ALJ explained that there is no evidence in the record to support such extreme limitations and pointed out that plaintiff denied any difficulties with her memory, her ability to concentrate, and her ability to complete tasks.[22]

Plaintiff argues that this was not a legitimate reason because the record shows that she reported symptoms of depression on many occasions[23] and even Dr. Lace testified that she

---

[22] Admin. Rec. at 477.

[23] Admin. Rec. at 257, 325, 329, 334, 337, 340, 383, 457, 1083, 1086, 1089, 1096, 1100, 1316, 1328, 1333.

had depressive disorder secondary to chronic pain.[24] But the fact that plaintiff had depression does not in and of itself mean that Thompson's opinion was supported by the medical evidence of record. Thompson's opinion was not that plaintiff had depression but that she was extremely limited in her mental capacity as a result of that depression.

The evidence of record does not support Thompson's opinion. In particular, as the ALJ noted, plaintiff's own function report contradicts Thompson's opinion. On May 2, 2012, plaintiff reported that she can finish what she starts, can follow written and oral instructions "just fine" and handles stress and changes in her routine "just fine."[25] In addition, plaintiff often showed "good cognition" upon exam.[26] The ALJ did not err in rejecting Thompson's opinion as to plaintiff's mental capacity.

Plaintiff next argues that the ALJ erred as to Dr. Kropp's opinion. Dr. Kropp, an interventional anesthesiologist, who treated plaintiff's spinal pain.[27] On January 30, 2012, Dr. Kropp opined that plaintiff could walk 1 block, sit for 5 minutes at a time, stand for 5 minutes at a time, sit for 1 hour total in an 8-hour day, stand/walk for 1 hour total in an 8-hour day, and occasionally lift/carry less than 10 pounds.[28] Dr. Kropp opined that plaintiff had limitations as to doing repetitive reaching, handling, or fingering but did not indicate

---

[24]Admin. Rec. at 495.

[25]Admin. Rec. at 175-176.

[26]Admin. Rec. at 329, 334, 337, 1256, 1258, 1260.

[27]Admin. Rec. at 1101.

[28]Admin. Rec. at 297-298.

specifically what these limitations were.²⁹  Dr. Kropp opined that plaintiff would need to recline or lay down in excess of regularly scheduled breaks in an 8-hour day, but also wrote "N//A" in response to the question "[w]ill your patient need to take unscheduled breaks during an 8-hour workday?"³⁰  Dr. Kropp also opined that plaintiff's symptoms would be severe enough to constantly interfere with the "attention & concentration required to perform simple work-related tasks[.]"³¹  Dr. Kropp opined that plaintiff was not physically capable of working an 8 hour day, 5 days week on a sustained basis.³²

Plaintiff first argues that the ALJ erred as to Dr. Kropp's opinion because the ALJ failed to evaluate the factors set out in 20 C.F.R. § 404.1527(c), as the ALJ is required to do. These factors are 1) examining relationship, 2) treatment relationship, 3) supportability, 4) consistency, 5) specialization, and 6) any other relevant factors.  Plaintiff argues that the ALJ failed to consider that Dr. Kropp had an extensive treatment relationship with plaintiff, spanning at least eight years, that he treated her regularly, that he referred her to specialists, and that he had consulted with those specialists on the proper course of care.  Plaintiff also points out that Dr. Kropp was the only physician who had actually examined her who offered an opinion as to her physical limitations.

The ALJ did not fail to evaluate the factors set out in 20 C.F.R. § 404.1527(c).  The

---

²⁹Admin. Rec. at 298.

³⁰Admin. Rec. at 297.

³¹Admin. Rec. at 297.

³²Admin. Rec. at 298.

ALJ expressly stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527...."[33] More specifically, as to Dr. Kropp's opinion, the ALJ noted that Dr. Kropp was plaintiff's "long-time treating provider" and the ALJ stated that he had considered Dr. Kropp's opinion "in light of the fact that he has been treating claimant since 2004[.]"[34] The ALJ also considered the supportability of Dr. Kropp's decision. In fact, the only reason the ALJ gave for rejecting Dr. Kropp's opinion was that it was not supported.

Plaintiff next argues that the ALJ erred as to Dr. Kropp's opinion because the ALJ failed to follow the court's direction as to Dr. Kropp's opinion on remand. "[A]s a general principle, the United States Supreme Court has recognized that an administrative agency is bound on remand to apply the legal principles laid down by the reviewing court.'" Samples v. Colvin, 103 F. Supp. 3d 1227, 1232 (D. Or. 2015) (quoting Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1213–1214 (C.D. Cal 2005). An ALJ errs if he fails to follow the specific instructions of the court in a remand order. Id.

In the June 4, 2013 decision, the ALJ rejected Dr. Kropp's decision because it was "inconsistent with the evidentiary record as a whole, specifically the objective evidence which revealed that the claimant had normal strength, reflexes, and sensations."[35] The ALJ also found Dr. Kropp's opinion "inconsistent with the imaging of the claimant's spine,

---

[33]Admin. Rec. at 475.

[34]Admin. Rec. at 477.

[35]Admin. Rec. at 27.

which, as noted above, has also been unremarkable."[36]

The court found that these were not legitimate reasons.[37] The court found that the second reason was not legitimate because "[p]laintiff was not diagnosed with or treated for any degenerative impairments or disc disease which would have been revealed by imaging."[38] As to the first reason, the court found that "[b]efore dismissing Dr. Kropp's opinion, the ALJ should have contacted Dr. Kropp for clarification of the reasons for the opinions expressed in his medical source statement."[39] This finding was apparently based on "SSR 96-5p, which requires that 'if the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.'"[40] Although in the conclusion of its decision, the court only generally remanded the matter "for further proceedings consistent with this opinion[,]"[41] earlier in the decision, the court specifically stated that "[u]pon remand, the Commissioner

---

[36]Admin. Rec. at 27.

[37]Admin. Rec. at 598-599.

[38]Admin. Rec. at 598.

[39]Admin. Rec. at 599.

[40]Admin. Rec. at 598.

[41]Admin. Rec. at 601.

-12-

is reminded of the guidance of SSR 96-5p[.]"[42]

The question here is: "Was the ALJ required by the district court's order to contact Dr. Kropp to get a clarification of his opinion?" This district court concludes that the prior court did not specifically order the ALJ to contact Dr. Kropp. Rather, the prior court simply reminded the ALJ to look to SSR 96-5p for guidance. SSR 96-5p instructs an ALJ to contact a treating physician if the ALJ cannot ascertain the basis for that physician's opinion. In the decision under review, the ALJ stated that "[w]hile I can appreciate that Dr. Kropp has a treating relationship with the claimant, and he is familiar with her subjective complaints, I agree with Dr. Lebeau that there is no evidence in the record other than the claimant's complaints of pain."[43] The court reads this statement to mean that the ALJ concluded that the basis for Dr. Kropp's opinion was plaintiff's subjective complaints of pain. In other words, on remand, the ALJ was able to ascertain the basis for Dr. Kropp's opinion and thus there was no need for the ALJ to contact Dr. Kropp for a clarification of his opinion.

The final question as to Dr. Kropp's opinion is whether the ALJ's reason for rejecting it was legitimate. On remand, and after hearings on December 6, 2016 and March 31, 2017, the ALJ again rejected Dr. Kropp's opinion because it was not supported by the objective evidence of record. In support, the ALJ cited to plaintiff's normal cervical and thoracic spine MRIs in November 2011, her "relatively" normal 2013 and 2016 nerve conduction studies,

---

[42]Admin. Rec. at 598.

[43]Admin. Rec. at 478.

her normal tilt test, and one treatment record from October 2012 which indicated that her gait was non-antalgic and that she had no range of motion restrictions, no weakness or atrophy, no deep palpitation tenderness, and no difficulties heel-toe walking.[44]

An ALJ may not reject the opinion of a treating physician such as Dr. Kropp "without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Lester, 81 F.3d at 830). In again deciding in the decision under review that Dr. Kropp's opinion was not supported by evidence in the record, the ALJ relied upon the testimony of Dr. Lebeau at the March 31, 2017, supplemental hearing. Dr. Lebeau testified that, in his opinion, plaintiff had "a mysterious, still undiagnosed, chronic pain that appears to have been very, very severe at times and which does not seem to be ... some sort of phony thing or some sort of feigned or false matter."[45] Dr. Lebeau opined that plaintiff could lift/carry ten pounds frequently and 20 pounds occasionally; could sit for 6 hours but would need to change positions every hour; could stand for 3 hours but would need to change positions every half hour; could walk for 2 hours but would need to change positions every half hour; could frequently reach and push/pull; could continuously handle, finger, and feel; could use her feet for repetitive functions frequently; could never climb ladders/scaffolds; could occasionally climb stairs/ramps; could continuously balance; could occasionally stoop, kneel, crawl, and crouch;

---

[44]Admin. Rec. at 478.

[45]Admin. Rec. at 502-503.

should never be around unprotected heights; and could frequently be around moving mechanical parts.[46] Dr. Lebeau was also asked what effect plaintiff's pain, which he characterized as severe, would have on her ability to sustain a 40-hour workweek over time, and he testified that "[i]t would be very adverse unless there is some improvement."[47] He later testified that he might leave the word "very" out, but that plaintiff's pain would have an adverse effect on her ability to sustain full-time employment.[48]

The ALJ rejected Dr. Lebeau's testimony about plaintiff's pain, which in this court's view substantially validates Dr. Kropp's opinion, because "there is just no evidence in the record to determine that [her pain] would prevent her from sustaining full-time work."[49] The ALJ then noted that plaintiff "has consistently been able to attend to appointments, including those located out-of-state. She has remained engaged in her treatment and care, and she has conducted her own research into her condition."[50] The court fails to see how plaintiff's participation in her treatment and care equates to her being able to work full-time despite pain that both medical experts have testified would adversely affect her ability to work. At the December 6, 2016, rehearing, Dr. Harder (an internal medicine medical expert) testified that plaintiff would "have several days of the month where [s]he can't go to work because

---

[46]Admin. Rec. at 507-508.

[47]Admin. Rec. at 514.

[48]Admin. Rec. at 516.

[49]Admin. Rec. at 476.

[50]Admin. Rec. at 476.

[s]he's going to the doctor and because of the unscheduled intrusions of [her] symptoms."[51] Dr. Harder was unable to offer an opinion as to plaintiff's functional capacity and recommended that plaintiff be sent to a physiatrist to get a good functional assessment.[52]

"The ALJ in a social security case has the independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' This duty extends to the represented as well as to the unrepresented." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations omitted). In that case, the ALJ was faulted regarding the completeness of the record where the ALJ relied upon the testimony of a medical expert who had testified that there was insufficient evidence for him to render an opinion. Id. at 1150-51. Here, as in Tonapetyan, the ALJ adhered to his original rejection of Dr. Kropp's opinion despite the testimony of Dr. Lebeau and the recommendation of Dr. Harder. That plaintiff is experiencing significant pain is undisputed. The record lacks functional capacity evidence which may or may not support plaintiff's description of her limitations due to pain. Although it appears that plaintiff was sent for a consultative exam after the December 6, 2016 rehearing as she was examined by Susan Klimow, M.D., on January 19, 2017,[53] the ALJ then rejected Dr. Klimow's opinion because it "address[ed] the

---

[51]Admin. Rec. at 545.

[52]Admin. Rec. at 547.

[53]Admin. Rec. at 1332-1334.

time period beyond the scope of this decision."[54]

"'Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits....'" Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001) (quoting Sims v. Apfel, 530 U.S. 103, 110–11 (2000)). The ALJ did not fulfill that duty because the ALJ failed to develop a record that would explain the impact of plaintiff's pain upon her functional capacity. It was error for the ALJ to reject Dr. Kropp's opinion, which was based on plaintiff's pain complaints, complaints which were not disputed by either Dr. Lebeau or Dr. Harder, without fully and fairly developing the record as to the effect of plaintiff's pain upon her ability to sustain full-time work.

Because the ALJ erred, then the court must decide whether to remand for an award of benefits or for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Where there is conflicting evidence, and not all essential factual issues have been

---

[54]Admin. Rec. at 478.

resolved, a remand for an award of benefits is inappropriate." Treichler v. Comm'r of Social Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021). Here, a remand for further proceedings is appropriate because further development of the record is necessary to determine what impact plaintiff's pain has on her ability to sustain full-time employment.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed. This matter is remanded for further proceedings. On remand, the ALJ shall obtain an opinion from a physiatrist as to plaintiff's functional capacity and, if necessary, also obtain further testimony from a vocational expert as to plaintiff's ability to perform full-time work.

DATED at Anchorage, Alaska, this 14th day of February, 2018.

/s/ H. Russel Holland
United States District Judge